**In re Thomas Carson HELM, Debtor.**

**Thomas C. HELM, Plaintiff,**

**v.**

**Kay Hampton HELM, Defendant.**

**Bankruptcy No. 38300867.**

**Adv. No. 3840064.**

United States Bankruptcy Court, W.D. Kentucky.

June 3, 1985.

Walter J. Swyers, Jr., Louisville, Ky., for plaintiff.

Kevin P. Keeler, Louisville, Ky., for defendant.

Glenn Schilling, Louisville, Ky., Trustee.

## ORDER OVERRULING MOTION TO RECONSIDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Among the least surprising documents to be filed with the court is the losing party's motion to reconsider an adverse decision. We have here such a pleading. The court's response is equally predictable.

*Helm v. Helm,* decided April 15, 1985, 48 B.R. 215, following a current precedent from the U.S. Sixth Circuit Court of Appeals, departed from a series of consistent rulings from the Kentucky court system and virtually eradicated a debtor's maintenance obligation to a former spouse. It is that ruling we are urged to reconsider.

In an articulate paper which almost matches our original opinion for length, counsel for the former spouse takes exception to two elements of our opinion—the facts and the law.

Rather than respond on a detailed, line-item basis to the multifold elements of the motion to reconsider, we will attempt to extract the distillate of counsel's argument

and reflect upon it in a general way. Along the way we will digress into the potentialities and limits of the judicial opinion as an art form.

Counsel would have us considerably enlarge our opinion by the inclusion of numerous and specific findings of fact favorable to Mrs. Helm. Significantly, she does not ask for the deletion or correction of any of the facts we did report. All of the proposed additional findings of fact are supported by the record. But because inclusion equals emphasis, we will not incorporate them in our opinion.

At the hands of all but the most creative artisan, the judicial opinion is a simple, single-subject essay, usually structured along the lines of (a) a summary of the facts deemed necessary to a correct decision, (b) a statement of the principles of law which are or should be determinative of the outcome, (c) an application of the law to the facts, and (d) announcement of the result, accompanied, in the opinions of better quality, by a description of the mental processes through which were joined the particular facts and general law.

Crafted within the severe limits of time and talent, held captive by James Baldwin's maxim that "writers work in the disastrously explicit medium of language",[1] the written opinion is barely adequate at its best to portray events and reasoning. Words describe actions only slightly better than a financial statement describes the heft and clink of a handful of silver and gold. But the judicial opinion may be as notable for what it does *not* say as for what it does. The absence of proven facts denotes their lack of persuasion in the mind of the writer. The selection of *which* facts to include is therefore more important to the judicial editorial process than the mere writing of them.

There is also, of course, the matter of controlling the length of the opinion. In his newest book the prolific Judge Posner criticizes the contemporary judicial opinion as a "self-indulgent display ... much longer than it need be, the author having made no effort to prune it of facts, procedural history, and citations that are unnecessary to the decision".[2]

A thousand words or less, any journalist would agree, should be enough to get the gist of any message, however complex. Our original opinion was five times that length; Mrs. Helm's counsel would have us double it again by recitations which, however true, would not alter the outcome. Rather than reprint the trial transcript over our signature, we will leave it to our appellate court to review all of the record that goes before it, including that small portion of it occupied by our opinion.

We will stand, in other words, on those editorial prerogatives which went into the original opinion.

Of much deeper concern to the court is counsel's argument that we should now reject the first premise upon which our opinion was based. That premise—taken as so self-evident that it was admittedly glossed over—was that the *Calhoun* rule is not limited to debt-assumption cases, but has "general applicability to all support cases brought under 11 U.S.C. § 523(a)(5)".[3]

We stand on the premise. Consider the reverse, and the practical implications of the rule urged by Mrs. Helm's attorney— that matters designated as "maintenance" are beyond review by bankruptcy courts. Parties to a divorce proceeding could simply attach the label "maintenance" to the assumption of debts, or their dollar equivalent, and thereby insulate those matters from inquiry upon a spouse's subsequent insolvency. Form would prevail over substance, the "fresh start" principle would be subverted, nondischargeability would stand determined prebankruptcy, and judicial review would be precluded. If we are correct in our economic analysis of the rationale

1. Baldwin, *Notes of a Native Son,* Foreword (1955).

2. Posner, *The Federal Courts: Crisis and Reform* (Harvard University Press 1985), at 230–231.

3. Opinion at p. 9, text accompanying note 16.

for the *Calhoun* rule, then the reading urged by counsel would make necessary the Sixth Circuit's complete reversal of its own reasoning on the broadest conceptual plane. We leave to counsel the working of that reversal.

In her closing pages counsel for Mrs. Helm raises the ghoulies and ghosties and long-legged beasties and things that go bump in the night, the spectre of starving families abandoned and over-taxed courts grinding to a halt in the enforcement of unsound social policy. We do not discount those concerns, although we do view the parade of horribles with far less certainty and considerably diminished alarm. Counsel must recall that nowhere in our opinion did we say that the *Calhoun* doctrine is a good rule of law or a bad rule of law, only that it is *our* rule of law. These policy considerations can be properly addressed only by our appellate court.

For the above reasons, the defendant's motion for reconsideration is hereby OVERRULED. This is a final order, and no further such motions will be entertained.